UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KEVIN MORRISON,
                          Petitioner,

      -against-

                                           **MEMORANDUM & ORDER**

ROBERT ERCOLE, Superintendent,                     06 CV 1144


                        Respondent.
-------------------------------------------------------------X
DEARIE, Chief Judge.

      The testimony of two eyewitnesses established that petitioner Kevin Morrison shot a gun multiple times on a street lined with teenagers outside a Brooklyn nightclub. One of the bullets entered the back, then the lung, of a fifteen year-old girl, killing her. Petitioner was convicted of second degree murder and second degree criminal possession of a weapon and is now serving a sentence of 22 years to life. His petition for a writ of habeas corpus under 28 U.S.C. §2254 raises a number of grounds for relief. Each is without merit.

      (1) Petitioner's claim that the verdict was against the weight of the evidence is not cognizable in a habeas corpus proceeding. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

      (2) Petitioner makes a credibility-based, and therefore fruitless, insufficiency challenge to his second degree murder conviction. He claims that the two witnesses called by the state, who identified petitioner as the shooter, were incredible, and that the witnesses called on his behalf, all friends of his who testified that he did not have a gun and that the shots came from a passing vehicle, were far more plausible. A petitioner making such a claim bears a "very heavy burden," Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). Here, the claim fails because petitioner

has not shown that the Appellate Division acted contrary to or unreasonably applied Supreme Court law, or made an unreasonable determination of the facts, when it found that the evidence "was sufficient to establish [petitioner's] identity beyond a reasonable doubt." People v. Morrison, 18 A.D.3d 887 (2d Dep't 2005).[1] See Jackson v. Virginia, 443 U.S. 307, 310 (the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in the original). Under this "rigorous standard," a "'federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326).[2]

(3) Petitioner claims that he was denied his right to a fair trial because of alleged improprieties during the People's summation. Specifically, petitioner claims that the assistant district attorney suggested to the jury that other witnesses would have implicated petitioner but were to afraid to come forward, vouched for the prosecution's witnesses, shifted the burden of proof, and implored the jurors to deliver justice for the victim and her family. No objection was interposed on any of these grounds at trial, and the Appellate Division rejected them as un-preserved and in the alternative as not warranting reversal. People v. Morrison, 18 A.D.3d at

---

[1] The Appellate Division ruled in the first instance that petitioner's challenge to the sufficiency of the evidence of identification was un-preserved for appellate review.

[2] Petitioner's sufficiency challenge is addressed to the factual question of who fired the shots. The petition does not raise the legal question of whether the firing of multiple gunshots on a crowded public street is properly chargeable as depraved indifference murder.

887. These contentions cannot be a basis for habeas relief because petitioner has failed to show that the Appellate Division's rejection of this claim was contrary to or an unreasonable application of Supreme Court law. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (comments by a prosecutor, even if "undesirable" or "universally condemned," do not amount to constitutional error unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal citation omitted). Having reviewed the prosecution's summation, the Court concludes that, even if the claim were properly preserved, it would not meet this high standard.

Two of the four improprieties that petitioner alleges did not, in fact, occur during the summation; that is, nowhere in the summation did the prosecutor "vouch" for his own witnesses or expressly or impliedly shift the burden of proof. To be sure, the prosecutor did outline, zealously and with reference to logic, motivation, bias and opportunity to observe, the reasons that the prosecution's identification witnesses should be believed and, likewise, the reasons that the defense witnesses should not be believed. Arguments on the subject of witness credibility are not, however, tantamount to improper vouching (i.e., the offering of a personal opinion on the matter). Likewise, the implicit invitation to compare prosecution and defense witnesses—inherent whenever the defense calls witnesses and credibility is at issue—does not amount to a shifting of the burden of proof.

In any event, the trial court's instructions adequately cured any harm arguably attributable to the prosecutor's remarks on credibility. Among other things, the court instructed the jury (i) that the arguments presented to them during summation were only that, arguments; (ii) that the attorneys were "not witnesses to anything" and "know nothing more about the case than" jurors

do; and (iii) that the jurors "are to disregard any personal opinions that may have been expressed by the attorneys during their summation." T. 619. The court also instructed the jurors, extensively and properly, on burden of proof, T. 623-24, the factors to consider in determining witness credibility, T. 627-32, and the factors to consider in determining capacity to observe. T. 637-40. Thus, petitioner could not have been substantially prejudiced. See Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (in determining whether a prosecutor's improper summation remarks have caused "substantial prejudice" resulting in a denial of due process, the Court considers "the severity of the misconduct[,] the measures adopted to cure the misconduct[,] and the certainty of conviction absent the improper statements").

The other two alleged improprieties are not wholly unfounded as a matter of fact, but they are not of sufficient severity to warrant habeas relief under Darden, 477 U.S. at 181, in light of the court's instructions, which cured any arguable harm, and in light of the substantial evidence of petitioner's guilt. First, the evidence had established that there were many people on the street on the night of the shooting, and so the prosecutor, in understandably seeking to explain why it had only called only two identification witnesses, argued to the jury that "it's never easy" for "guys in this type of community to come forward," and that the many other witnesses on the street that night who probably saw who shot the gun did not come forward because they also "could see what this person [petitioner] was capable of doing." T. 603. The court instructed the jurors, however, that although they had "heard testimony that in addition to the witnesses who testified at the trial other people were present outside of the Club Warehouse at the time of the shooting," they were "not [to] speculate as to why these other people did not testify in this trial, or what they might have said if they had been called as witnesses." T. 621.

Second, the prosecutor did urge the jurors to deliver justice for the victim and her family, specifically arguing to the jury it "would not be right for the family" for the jury to convict of manslaughter instead of murder. T. 614. But the prosecutor's immediate next remark was that "the [j]udge will explain to you what manslaughter is." T. 614. The court properly instructed the jurors, however, on the differences between second-degree murder and second-degree manslaughter, T. 643-45, and reminded them "not to decide [the] case based upon improper consideration[s] such as . . . feelings of sympathy [they] may have." T. 654. Thus, even assuming that the prosecutor's reference to the victim's family or to uncalled scene witnesses fell outside the bounds of appropriate summation remarks, the court's instructions sufficiently remedied any arguable harm, so petitioner cannot show that the remarks caused him "substantial prejudice" resulting in the denial of due process. Floyd, 907 F.2d at 355.

(4) Petitioner's final claim is that, when outlining the nature of the charges to potential jurors, the trial court crossed the line into the area of formal instructions on the law and that these "instructions," coupled with remarks claimed to be unduly sympathetic toward the victim, encouraged premature deliberations and denied him a fair trial. Petitioner rests his claim principally on the order of proceedings outlined in Criminal Procedure Law § 260.30, which provides that the court instruct jurors on the elements of the law only after the close of the evidence and summations. Violations of state procedural law, however, are not cognizable on habeas. 28 U.S.C. § 2254 (a) (application for writ may be entertained "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States").

Even if this claim were construed as implicating Due Process, petitioner has not shown that the state court's rejection of this claim was contrary to or an unreasonable application of

Supreme Court law. Cupp v. Naughten, 414 U.S. 141, 147 (1973) (standard is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"). See also Smalls v. Batista, 191 F.3d 272, 277 (2d Cir. 1999) (federal court must assess a challenged instruction "as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury").

The remarks of the trial court that petitioner challenges here were introductory statements of the type customarily and appropriately made to potential jurors about the kind of case on which they might be chosen to serve and the kinds of demands it might make upon their sensibilities. The court stated,

> [Petitioner] is charged with shooting a gun at the time and causing the death of an individual named Taya Anderson. He is not charged with intentionally killing her. You will hear during the trial that he is charged with the crime of Murder in the Second Degree, which is reckless murder under circumstances evincing a depraved indifference to human life, but what that means, I will tell you at the end of the case.
>
> There was a shooting, as I said, at the time; and [petitioner] is charged with firing the gun and causing her death. She, at the time, was 15 years old and, as I said, he is not charged with intentionally shooting her, he is charged with shooting the gun and causing her death.
>
> Now, you will hear testimony . . . that a 15-year-old girl that just was not involved in this incident in any way other than being there, was shot and killed. We are not looking for jurors with hearts of stone. Obviously, you will feel sorry about that. If we had to find 12 people that didn't have feelings about that, I doubt if we could, but this is what you have to do.
>
> The other side of the coin the defendant is a young man. He is charged with a serious crime. He is not charged with intentionally killing her, but it's murder, it's a serious crime. You may wind up at the end of the case feeling sorry for him. You may say, 'Well, he didn't mean to kill her. . . .
>
> He is not charged with intentionally killing her. Nobody is saying he did. But you may wind up feeling sorry for him. But if he has been proven guilty

beyond a reasonable doubt, then your verdict must be guilty, even if you feel sorry for the situation that the finds himself in. . . This is not a contest about who you feel more sorry for, the deceased or the defendant. . .[3]

These passages cannot reasonably be construed as the trial court's delivery of formal instructions to potential jurors on the elements of the law; to the contrary, the court told the potential jurors that, "what [depraved indifference] means, *I will tell you at the end of the case*," (emphasis added). Further, examining these excerpts as "part of the whole instruction, and indeed, as part of all the proceedings that were observed," Smalls, 191 F.3d at 277, there can have been no risk of premature deliberation attributable to those opening remarks. Indeed, once a panel of jurors was selected and sworn, the court properly instructed them, as is customary at the start of trial, *not* to discuss the case with each other or with anyone until they retired to deliberate at the end of the trial, and to form *no* opinion about the case until all the evidence was in. See T.11-12. Finally, on the particular claim of encouraging undue sympathy, the challenged passages reveal reasonable, if not perfect, balance in the court's attention to the possibly sympathy-inducing circumstances of both the victim and petitioner, as well as the clear warning that the case was "not a contest about who [jurors] feel more sorry for." In sum, the challenged excerpt of the trial court's preview of the case to potential jurors did not "by itself so infect[] the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. at 147.

---

[3] The Court was not furnished with transcripts of the jury selection. The petition, however, relies entirely on the arguments in petitioner's state court appellate brief, from which this passage—the entirety of the remarks that petitioner challenges—is taken.

## CONCLUSION

For the foregoing reasons, the application is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
October 22, 2008

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge